In the
 Missouri Court of Appeals
 Western District
 DONALD JOHNSON, )
 )
 Appellant, ) WD84335
 )
 v. ) OPINION FILED: December 14, 2021
 )
 MISSOURI DEPARTMENT OF )
 CORRECTIONS, )
 )
 Respondent. )

 Appeal from the Circuit Court of Cole County, Missouri
 The Honorable Daniel R. Green, Judge

Before Division Three: Lisa White Hardwick, Presiding Judge, Gary D. Witt, Judge and
 Edward R. Ardini, Jr., Judge

 Donald Johnson ("Johnson") appeals the Circuit Court of Cole County's ("trial

court") grant of judgment on the pleadings in favor of Missouri Department of Corrections

("DOC"). Johnson raises three points on appeal alleging trial court error in granting DOC's

Motion for Judgment on the Pleadings and denying Johnson's Petition for Declaratory

Judgment and motion for summary judgment. Point I alleges the trial court erred in relying

on Mitchell v. Phillips, 596 S.W.3d 120 (Mo banc 2020), in determining the statutory

amendments did not apply to class X offenders because the statute analyzed in Mitchell
was silent as to its retroactive effect, whereas the amendments to section 558.019 at issue

before the Court specifically provided it was to be applied retroactively. Point II alleges

the trial court erred because it drew an artificial distinction between minimum sentences

based on convictions and minimum sentences based on commitments to DOC, and it found

that because the sentencing court memorialized his class X offender status in the court's

sentence and judgment, it was beyond the power of the legislature to alter. Point III alleges

the trial court erred in concluding the transfer of the former attempt statute, section 564.011

to section 562.012, eliminated the distinction between completed offenses and inchoate

offenses, and therefore an ambiguity now exists requiring the trial court to apply the rule

of lenity. We affirm.

 Factual and Procedural Background

 Johnson was convicted by a jury of one count of robbery in the first degree (Count

I), section 570.023 (1992), and one count of attempted robbery in the first degree (Count

II), section 564.011,1 for events that occurred on March 12, 1993. On February 18, 1994,

Johnson was sentenced to thirty years for Count I and a consecutive five years for Count

II. Due to Johnson's prior convictions, he was found to be and was sentenced as a class X

offender on both counts, and the trial court sentenced him to serve eighty percent of each

of his sentences prior to being eligible for parole. See section 558.019.2(3) (1992). A class

X offender was "one who [had] previously pleaded guilty to or [had] been found guilty of

three felonies committed at different times." Section 558.019.2(3) (1992). The statute also

 1
 The attempt statute was subsequently transferred to section 562.012. See S.B. 491, 97th Gen. Assembly,
2nd Reg. Session (2014), with a delayed effective date of January 1, 2017.

 2
provided, "The final judgment and sentence of anyone found to be a prior offender, a

persistent offender, or a class X offender shall reflect such finding." Section 558.019.5

(1990).

 Since the commission of Johnson's crimes in March 1993, section 558.019 has been

amended numerous times. H.B. 562 amended section 558.019.2 and eliminated the class

X offender designation effective August 28, 1993. See H.B. 562, 87th Gen. Assembly, 1st

Reg. Session (1993). Instead of classifying certain defendants as "class X offenders," the

amended subsection 2 (3) read: "If the defendant has three or more prior felony convictions

committed at different times, the minimum prison term which the defendant must serve

shall be eighty percent of his sentence." Section 558.019.2(3) (1993 Supp.) (emphasis

added). One year later, on August 28, 1994, subsection 2 (3) was amended again to read:

 If the defendant has three or more previous remands to the department of
 corrections for felonies unrelated to the present offense, the minimum prison
 term which the defendant must serve shall be eighty percent of his sentence
 or until the defendant attains seventy years of age, and has served at least
 forty percent of the sentence imposed, whichever occurs first.

S.B. 763, 87th Gen. Assembly, 2nd Reg. Session (1994) (emphasis added). Under this

administrative determination of eligibility for parole, the DOC would apply a mandatory

minimum sentence based upon the number of "remands" the defendant had to the DOC,

rather than the number of "felony convictions" committed at different times. S.B. 763 also

added a new subsection 7 to section 558.019, which specifically indicated the provisions

of the amended section 558.019 would only apply to offenses occurring on or after August

28, 1994, indicating a clear legislative intent that the new provision of section 558.019

(1994) should not be applied retroactively. Phillips v. Missouri Dept. of Corrections, 323

 3
S.W.3d 790, 793 (Mo. App. W.D. 2010). In 1998, the word "remands" in subsection 2 of

section 558.019 was substituted with "prison commitments," which is defined as "the

receipt by the department of corrections of a defendant after sentencing." See S.B. 766,

89th Gen. Assembly, 2nd Reg. Session (1998).2 The process wherein the trial court

pronounces the sentence and the DOC administratively determines parole eligibility based

on prior prison commitments remains the administrative practice today.

 Section 558.019 was most recently amended in 2019 with the passage of H.B. 192.

See H.B. 192, 100th Gen. Assembly, 1st Reg. Session (2019). H.B. 192 (2019) repealed

subsection 9 of 558.019 which had provided, "9. The provisions of this section shall apply

only to offenses occurring on or after August 28, 2003." H.B. 192 (2019) further added

subsection 6 to section 558.019, which reads:

 An offender who was convicted of, or pled guilty to, a felony offense other
 than those offenses listed in subsection 2 of this section prior to August 28,
 2019, shall no longer be subject to the minimum prison term provisions under
 subsection 2 of this section, and shall be eligible for parole, conditional
 release, or other early release by the department of corrections according to
 the rules and regulations of the department.

 The offenses to which subsection 6 does not apply, those listed in subsection 2,

includes robbery in the first degree, section 570.023, but does not explicitly list the attempt

statute, section 562.012, or make any reference to inchoate offenses. See section 558.019.2

(2019).

 2
 558.019 (1998) retained subsection 7 directing that its provisions were only applicable to offenses that
occurred on or after August 28, 1994. 558.019.7 was amended in 2003 by S.B.5 and became subsection 9, which
provided that 558.019's provisions were only applicable to offenses occurring after August 28, 2003.

 4
 When H.B. 192 (2019) became effective on August 28, 2019, Johnson had served

eighty percent of his thirty-year sentence on Count I, robbery in the first degree, and had

begun serving the mandatory minimum, eighty percent, of his consecutive 5-year sentence

for Count II, attempted robbery in the first degree. Johnson, believing the passage of H.B.

192 (2019) would afford him relief from his mandatory minimum sentence for Count II,

inquired to the DOC if the amendment to the statute impacted his sentence and if it did,

when he would be parole eligible. The DOC informed Johnson its interpretation was that

H.B. 192 (2019) did not apply to sentences imposed prior to August 28, 1994, stating the

bill was not meant to affect individuals who were classified as class X offenders under

previous versions of the statute. Pursuant to the DOC's interpretation of the amendments,

class X offenders received their mandatory minimum sentences "per order of the court,"

which represented a "judicial finding" and were therefore unaffected by H.B. 192's grant

of parole eligibility to unenumerated felonies occurring prior to August 28, 2019.

 Johnson filed a petition for declaratory judgment against the DOC alleging he was

being compelled to serve a mandatory minimum sentence for Count II in violation of the

recently amended section 558.019.6. In its answer, the DOC did not dispute any of the

factual allegations in the petition. Johnson then filed a motion for summary judgment, and

subsequently DOC filed a Motion for Judgment on the Pleadings. The parties solely

dispute the application of section 558.019 (2019) to Johnson's sentence.

 The trial court denied Johnson's motion for summary judgment and granted the

DOC's motion for judgment on the pleadings, dismissing the petition, and ruling Johnson

is not parole eligible on Count II of his sentence for three reasons: (1) section 558.019

 5
(2019) cannot remove Johnson's class X offender status, which is part of the sentenced

imposed on him and memorialized in a final judgment; (2) Johnson was sentenced as a

class X offender based on prior convictions, and his mandatory minimum sentence before

eligibility for parole was determined by the judge and set forth in the final judgment, and

section 558.019 as amended only applies to sentences based on prior prison commitments

to the DOC and relies on the DOC to administratively determine the mandatory minimum

sentence before parole eligibility pursuant to the statute; and (3) applying section 558.019.6

to class X offenders such as Johnson reaches an absurd result because the new attempt

statute, section 562.012, eliminated the separate offense of an attempt to commit an offense

and provides that a person who attempts to commit an offense is guilty of the offense he

attempted to commit; therefore, if today Johnson committed the charged offense under

Count II of attempted robbery in the first degree, Johnson would be convicted of robbery

in the first degree, one of the listed offenses under 558.019.2. This appeal follows.

 Standard of Review

 "Rule 55.27(b) provides that a party can make a motion for a judgment on the

pleadings after the parties' pleadings are closed." French v. Mo. Dep't of Corrections, 601

S.W.3d 299, 300 (Mo. App. W.D. 2020). We review a circuit court's ruling on a motion

for judgment on the pleadings de novo. Woods v. Mo. Dep't of Corrections, 595 S.W.3d

504, 505 (Mo. banc 2020). "A motion for judgment on the pleadings should be sustained

if, from the face of the pleadings, a moving party is entitled to judgment as a matter of

law." Id. (internal quotations omitted).

 6
 Analysis

 Johnson argues the trial court erred in applying Mitchell, 596 S.W.3d 120, and ruling

that the current version of section 558.019 does not apply retroactively to former class X

offenders because such designation was part of Johnson's final judgment and sentence

because the statute at issue in Mitchell was silent as to its retroactivity. Johnson argues

section 558.019 explicitly authorizes a retroactive effect that makes offenders who were

convicted before August 28, 2019, no longer subject to the minimum prison term

provisions under subsection 2 of the statute. Because Johnson's attempted robbery offense

occurred in 1993, Johnson argues, it falls within 558.019.6's specific provision

encompassing certain offenses where the plea of guilty or conviction occurred prior to

August 28, 2019.

 Because the parties' arguments require the proper application of section 558.019,

we apply the rules of statutory interpretation. Our "primary rule of statutory interpretation

is to give effect to legislative intent as reflected in the plain language of the statute at issue."

Parktown Imports, Inc. v. Audi of Am., Inc., 278 S.W.3d 670, 672 (Mo. banc. 2009). "The

rules of statutory interpretation are not intended to be applied haphazardly or

indiscriminately to achieve a desired result." Id. "Instead, the canons of statutory

interpretation are considerations made in a genuine effort to determine what the legislature

intended." Id.

 "A criminal 'sentence' is the penalty for a particular offense." Bearden v. State, 530

S.W.3d 504, 506 (Mo. banc 2017). "The 'sentence' that a court imposes consists of

punishment that comes within the particular statute designating the permissible penalty for

 7
the particular offense." McCulley v. State, 486 S.W.2d 419, 423 (Mo. 1972). Johnson was

convicted of robbery in the first degree and attempted robbery in the first degree as a class

X offender. Section 558.019.4(3) (1992). At the time Johnson committed those offenses,

section 558.019.3(2) (1992) provided for the mandatory minimum prison term, which

stated, "If the defendant is a class X offender, the minimum prison term which the

defendant must serve shall be eighty percent of his sentence." "[T]he term 'minimum

prison term' shall mean time required to be served by the defendant before he is eligible

for probation, parole, conditional release or other early release by the department of

corrections." Section 558.019.7 (1992).

 Section 558.019.6 (2019) states:

 An offender who was convicted of, or pled guilty to, a felony offense other
 than those offenses listed in subsection 2 of this section prior to August 28,
 2019, shall no longer be subject to the minimum prison term provisions under
 subsection 2 of this section, and shall be eligible for parole[.]

 The trial court held, and DOC now argues, that subsection 6 does not apply to class

X offenders because such designation was made part of the final judgment and sentence

and therefore cannot be amended by later legislative repeal. To support its position, DOC

relies on Mitchell, 596 S.W.3d 120. In Mitchell, the defendant was convicted of drug

trafficking in the second degree, section 195.223.3(2) (2010). Mitchell, 596 S.W.3d at 122.

Because the court found the defendant to be a prior drug offender under section

195.275.1(1) (2010), section 195.295 (2000) required the court to sentence him "to the

authorized term of imprisonment for a class A felony, which term shall be served without

probation or parole[.]" Id. In 2017, section 195.295 was repealed, and the defendant filed

 8
a petition for declaratory judgment arguing he was eligible for parole because "the statute

that had rendered him ineligible for parole had been repealed." Id. The Court held the

repeal of the sentencing statute did not make the defendant parole eligible because the

defendant's "offense expressly mandated his term of imprisonment be served without

probation or parole." Id. at 124.

 Johnson argues this case is distinguishable from Mitchell for two reasons. First, the

Court in Mitchell addressed an outright repeal of a sentencing statute. Here, Johnson

argues, the statute in question does not repeal a sentencing statute; rather, the statute simply

amends parole eligibility and leaves the sentencing statute intact. Second, the legislation

in Mitchell was silent as to its retroactive application. But Johnson argues section

558.019.6 (2019), which is applicable to this case, explicitly applies to certain crimes where

a conviction or plea of guilty occurred before August 28, 2019, and therefore it is clear as

to its retroactive effect.

 While Mitchell addressed an outright repeal of a sentencing statute, Johnson argues

this case involves an amendment to a statute that retroactively applies to certain offenses

and affords relief from certain minimum prison term provisions. In this manner, Johnson

argues this case appears more factually akin to State ex rel. Nixon v. Russell, 129 S.W.3d

867 (Mo. banc 2004); Jones v. Fife, 207 S.W.3d 614 (Mo. banc 2006); and Dudley v.

Agniel, 207 S.W.3d 617 (Mo. banc 2006). In those cases, general parole statutes were

adopted or amended to alter parole eligibility. Our Supreme Court held the grant of parole

does not change an offender's sentence but merely changes "the location or circumstances

under which the sentence is served." Jones, 207 S.W.3d at 616. The amended statutes in

 9
those cases affecting parole eligibility did "not change the offender's punishment" because

parole ineligibility was not part of the offender's sentence in the first place. See Dudley,

207 S.W.3d at 618.

 But unlike the sentencing statutes in Russell, Jones, and Dudley, which lacked

restrictions on parole eligibility, the sentencing statute for the offense under which Johnson

was convicted and sentenced expressly restricted parole eligibility. See section 558.019.7

("For purposes of this section, the term "minimum prison term" shall mean time required

to be served by the defendant before he is eligible for probation, parole, conditional release

or other early release by the department of corrections."). And unlike Russell, Jones, and

Dudley, which held ineligibility for parole was not part of the punishment mandated by the

particular statutes establishing the permissible penalties for the offenses, here "[t]he final

judgment and sentence of anyone found to be a . . . class X offender shall reflect such

finding." Section 558.019.5 (1992).

 Mitchell applied the "overarching rule that the sentence is the 'punishment that

comes within the particular statute designating the permissible penalty for the particular

offense.'" Mitchell, 596 S.W.3d at 124. In Mitchell, the "statute designating the

permissible penalty for Mr. Mitchell's offense expressly mandated his term of

imprisonment be served without probation or parole[,]" so his ineligibility for probation or

parole was part of his sentence. Id. at 125. Similarly, Johnson's designation as a class X

offender became part of his sentence and final judgment and therefore restricts his

eligibility for parole.

 10
 If it were true that Johnson's sentence and final judgment contained no restriction

on parole eligibility, section 558.019.6 (2019) would afford him relief. See Mitchell, 596

S.W.3d at 124 ("When an offender's sentence contains no restrictions on parole eligibility,

statutory amendments to and repeals of general parole-eligibility statutes govern, subject

to the constitutional prohibition against ex post facto laws."). Since 1994, the trial court

sentences a defendant to a particular number of years in the DOC and the determination of

eligibility for parole is an administrative determination of the DOC based upon the various

applicable statutes as applied to the specific defendant's prior commitments to the DOC.

Parole eligibility is generally not a determination made by the trial court at sentencing or

included as part of the judgment and sentence.3 But 558.019.7 (1992) restricted eligibility

for parole for "minimum prison terms" of class X offenders until the defendant served

"eighty percent of his sentence." And because Johnson's class X offender status and the

specific restriction on parole eligibility became part of the "final judgment and sentence[,]"

section 558.019.6 can have no effect on Johnson's parole eligibility because it would affect

the sentence actually imposed on him by the trial court.

 Johnson also argues the trial court erred by drawing an artificial distinction between

minimum sentences based on convictions and minimum sentences based on prison

commitments. According to Johnson, this led the trial court to wrongly conclude Johnson's

class X status was beyond the statute because it was determined by the sentencing court

and memorialized in the court's judgment and sentence. Johnson urges us to find that

 3
 Section 565.020 establishing the sentence for murder in the first degree at a term of "imprisonment for life
without eligibility for probation or parole, or release except by act of the governor" is an example of a current
sentencing statute wherein the trial court would include parole eligibility in its judgment and sentence.

 11
subsection 6's directive to no longer apply mandatory minimum sentences that were

imposed pursuant to subsection 2, should be applied to Johnson's sentence.

 Section 558.019.6 provides:

 An offender who was convicted of, or pled guilty to, a felony offense other
 than those offenses listed in subsection 2 of this section prior to August 28,
 2019, shall no longer be subject to the minimum prison term provisions under
 subsection 2 of this section, and shall be eligible for parole, conditional
 release, or other early release by the department of corrections according to
 the rules and regulations of the department.

 Subsection 2 of section 558.019 provides, in relevant part:

 If the offender has three or more previous prison commitments to the
 department of corrections for felonies unrelated to the present offense, the
 minimum prison term which the offender must serve shall be eighty percent
 of his or her sentence or until the offender attains seventy years of age, and
 has served at least forty percent of the sentence imposed, whichever occurs
 first. (Emphasis added).

 In 1993, when Johnson committed the offenses charged in Counts I and II,

subsection 2 of section 558.019 read: "(3) If the defendant is a class X offender, the

minimum prison term which the defendant must serve shall be eighty percent of his

sentence." Section 558.019.2 (1992 Supp.). "A 'class X offender' is one who has

previously pleaded guilty to or has been found guilty of three felonies committed at

different times." Section 558.019.4(3) (1992) (emphasis added).

 To be eligible for parole under subsection 6, three elements must be satisfied: (1) an

offender must be convicted of a felony offense; (2) not listed in subsection 2; (3) prior to

August 28, 2019. Section 558.019.6 (2019). Only after these three elements are met does

the statute direct what will happen; that is, the offender will no longer be subject to the

minimum prison terms under subsection 2 and shall be eligible for parole.

 12
 The parties dispute the statute's effect that offenders will "no longer be subject to

the minimum prison term provisions under subsection 2." Section 558.019.6 (2019)

(emphasis added). DOC argues "under subsection 2" only refers to the "sentencing

scheme"4 created by the 1994 amendment to section 558.019, which permits the DOC to

administratively determine offender's mandatory prison terms based on "prior

commitments" to the DOC. See Stone v. Mo. Dept. of Corrections, Probation & Parole

Bd., 313 S.W.3d 158, 159 (Mo. App. W.D. 2010). By contrast, Johnson argues "under

subsection 2" refers to all offenders prior to August 28, 2019, who were sentenced under

subsection 2, even if the sentencing provisions under previous versions of subsection 2

substantively differed from the current sentencing provisions.

 When determining the phrase "under subsection 2" in the amended statute and the

previous version, "[we] must look to the relevant differences between the two statutes."

Desai v. Seneca Specialty Ins. Co., 581 S.W.3d 596, 599 (Mo. banc 2019). "The provisions

of any law or statute which is reenacted, amended or revised, so far as they are the same

as those of a prior law, shall be construed as a continuation of such law and not as a new

enactment." Section 1.120 (emphasis added). However, if amended statutes substantively

differ from previous versions, the amended statute is not a continuation of the prior version

pursuant to section 1.120 and is instead a reenactment of the statute. See Desai, 581 S.W.3d

at 601. Any references to sections of a statute that differ substantively from their prior

 4
 DOC's use of the phrase "sentencing scheme" in this context is somewhat of a misnomer, in that under the
current process the trial court sentences an offender to a number of years in the DOC but does not determine parole
eligibility as part of the sentence. Parole eligibility is administratively determined by the DOC pursuant to the
statutes after the sentence has been pronounced.

 13
versions only encompass the current version of the section, not prior versions. See id. at

600.

 Here, section 588.019.6's reference to "minimum prison term provisions under

subsection 2" does not reference subsection 2 as it existed when Johnson committed the

offenses charged in Counts I and II. Johnson argues the trial court created an "artificial

distinction" between prison commitments and convictions. But this misses the fact that not

only do the amendments to section 558.019 differ substantively, they enact an entirely new

practice by which offenders' parole eligibility is administratively determined by the DOC.

Under the former version, an offender was classified as a class X offender based on prior

convictions. See section 558.019.4(3) (1992 Supp.). This designation was assigned by the

trial court, after proof by the prosecution, as part of the judgment and sentence and was

memorialized by the court. Section 558.019.5 (1992 Supp.) ("The final judgment and

sentence of anyone found to be a prior offender, a persistent offender, or a class X offender

shall reflect such finding."). The 1994 amendments eliminated class X offender

designation and based parole eligibility on prior prison commitments rather than prior

convictions. Section 558.019 (1994 Supp.); Stone, 313 S.W.3d at 159. The 1998

amendments to the statute provided additional clarification by replacing the phrase

"remands" with "prison commitments" to the DOC. Section 558.019 (1998 Supp.); Stone,

313 S.W.3d at 160.

 Amended versions of a statute can only be construed as a continuation of the statute

"so far as they are the same as those of a prior law." Section 1.120. The various versions

of 558.019.2 differ substantively and cannot be referenced as a continuation but constitute

 14
a reenactment. Therefore, the statute's directive to no longer apply the minimum prison

term provisions under subsection 2 does not apply to Johnson because he was never subject

to the prison term provisions under the referenced subsection 2 in the first place. His

mandatory minimum sentence arose from a substantively different prior version of

subsection 2 that is not referenced by section 558.019.6. Accordingly, the grant of parole

eligibility found in subsection 6 does not apply to Johnson's offenses as a class X offender.

 Conclusion

 For the above-stated reasons, the judgment of the trial court is affirmed.

 __________________________________
 Gary D. Witt, Judge

All concur

 15